■ RELIANCE INSURANCE COMPANY, Appellant, v LOUIS SHULMAN et al., Respondents.—In a proceeding to stay arbitration, petitioner appeals from a judgment of the Supreme Court, Rockland County, entered September 1, 1977, which, after a hearing, denied the petition and directed the parties to proceed to arbitration. Judgment affirmed, with costs. No opinion. Martuscello, J. P., Shapiro and Margett, JJ., concur; Cohalan, J., dissents and votes to reverse the judgment and grant the petition to stay arbitration, with the following memorandum, in which O'Connor, J., concurs: The incident out of which this proceeding arose occurred on November 24, 1974, at 8:25 in the evening, at Spring Valley in Rockland County. Respondents demanded arbitration against petitioner under the uninsured motorists clause in their automobile insurance policy. They claimed they were in the victims of a hit-and-run driver. Petitioner denied that there had been any contact between respondents' automobile and another vehicle. Special Term found for the respondents and directed the parties to proceed to arbitration. The facts, the eyewitness, the police officer who responded to the scene and at least one document released under the aegis of Mrs. Shulman, serve to refute her testimony that her car was struck on the right rear quadrant. Indeed, her own testimony contributes to the refutation. Mr. Bolson, the eyewitness, who was 30 to 50 feet away from the accident scene, and whose view was unobstructed, testified that the "mystery" car (as it was referred to during the hearing) cut off the Shulman automobile by passing in front of it. He saw no contact and he heard no crash. If contact had been made it would have involved not the right rear fender and bumper of the Shulman car, but a portion of the left side of it. From his coign of vantage, the right rear of the Shulman car was the nearest part of it to him. Police Officer Migliorato,

who arrived on the scene within minutes after the Shulman car made contact with a pole, noted in his report: "Witness to accident, Sid Bolson of 82 Fairview Avenue, stated that he was situated at point A on digram *[sic]* and saw an unidentified vehicle going eastbound on 59 cut of *[sic]* driver #1 who was making a left turn onto S. Central while proceding *[sic]* westbound on Rt. 59. Driver #1 was incoherent but essentially stated the same report. Driver #1 hopped curb as shown on diagram and impacted with telephone pole as shown on diagram. Neither driver nor witness had any information on other car."* In the space provided in his report form, the police officer indicated the damage done to the Shulman automobile by blacking out the windshield, the left front up to the wheel, and the front of the hood. These points jibe with the damages to be expected as a result of a head-on collision with a telephone pole. Nothing on the diagram shows any damage to the right rear. In the MV-104 form ("Report of Motor Vehicle Accident"), which Mrs. Shulman's insurance broker filed on her behalf the day after the accident, a typed legend described the damage to her car as "front & windshield". In the accident description on the same form appears the statement: "Veh. #1 was cut off by unknown vehicle and was veered into pole." When Mrs. Shulman took the stand to explain the incidents of the accident, she stated in substance, on cross-examination, that the oncoming car was in its proper lane—and continued so—and that "he was coming at a terrific speed." Despite these avowals, she stated that the other vehicle somehow managed to strike her car on the right rear fender and then left the scene. From her description, the "mystery" car would have had to hit her car almost broadside, in which event he would surely have been stopped dead in his tracks. At a prior period in her testimony—on direct examination—the following series of questions and answers appear: "Q. By the way, did you ever see your car again after the accident? A. No. Q. Do you know what happened to it? A. They towed it away to a station and I was in the hospital. I never saw it. I was told it was a total wreck. Q. How was it disposed of, do you know? A. I think my son-in-law sold it for junk to the guy on *[sic]* the gas station, to the owner of the gas station." This series prompts one to raise the question "Why were not the son-in-law and the gas station proprietor produced to give testimony as to the points of impact on the car? The fair assumption is that if called they would have been unable to support the testimony of Mrs. Shulman that the right-rear quadrant was involved. As against the mass of independent evidence attacking her position, the only support in the record for Mrs. Shulman's claim consists of her own self-serving declarations. That such declarations are insufficient to sustain a claim has been pointed out in *Thomas v MVAIC* (54 AD2d 853); *Matter of Edwards v MVAIC* (40 AD2d 695) and *Matter of Thompson v MVAIC* (39 AD2d 508).

---

* Point "A" in the diagram is directly north of the accident scene. Reference to "Driver #1" signifies the Shulman automobile.